RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0200P (6th Cir.)
File Name: 03a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

INLAND BULK TRANSFER CO.,
  *Plaintiff-Appellee,*

  *v.*                                    No. 00-4222

CUMMINS ENGINE CO. et al.,
  *Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-00508—Donald C. Nugent, District Judge.

Argued: October 30, 2002

Decided and Filed: June 17, 2003

Before: SILER and MOORE, Circuit Judges; McKINLEY,*
District Judge.

———————————

**COUNSEL**

**ARGUED:** John Q. Lewis, JONES, DAY, REAVIS &
POGUE, Cleveland, Ohio, for Appellants. Marvin L. Karp,
ULMER & BERNE LLP, Cleveland, Ohio, for Appellee.

———————————

*The Honorable Joseph H. McKinley, Jr., United States District
Judge for the Western District of Kentucky, sitting by designation.

**ON BRIEF:** John Q. Lewis, JONES, DAY, REAVIS &
POGUE, Cleveland, Ohio, Shawn J. Organ, JONES, DAY,
REAVIS & POGUE, Columbus, Ohio, for Appellants.
Marvin L. Karp, Edward P. Simms, F. Thomas Vickers,
ULMER & BERNE LLP, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Defendants
Cummins Engine Co., Wartsila NSD North America, Inc.,
Cummins Wartsila Engine Co., and Case Credit Corp.
(collectively "Cummins") appeal the district court's denial of
their motion to stay a case pending arbitration and to compel
arbitration. Inland Bulk Transfer Co. ("Inland Bulk")
contracted with Cummins to purchase two naval propulsion
engines. After some problems with those engines developed,
Inland Bulk filed this lawsuit against Cummins, asserting
claims of breach of contract, breach of warranty, negligence,
and fraud. Cummins filed a motion to compel arbitration of
these claims pursuant to its contract with Inland Bulk and to
stay the suit pending arbitration. Inland Bulk argues that the
contract did not contain an arbitration provision, and argues
in the alternative that the arbitration provision was
unenforceable because it called for foreign arbitration.

The district judge in this case denied the motion to stay the
judicial action pending arbitration and to compel arbitration.
We hold that the arbitration provision was enforceable and
that the district court therefore erred in denying the motion to
stay the action pending arbitration. Because district courts
only have the power to compel arbitration within their own
districts and the arbitration agreement called for arbitration in
France, however, the district court did not err in denying the
motion to compel arbitration. We therefore **AFFIRM** the
district court's denial of the motion to compel arbitration,
**REVERSE** the district court's decision denying a stay

pending arbitration, and **REMAND** the case with instructions to the district judge to stay the case to allow the parties to proceed on their claims in arbitration. We also **DENY** Inland Bulk's motion to supplement the record.

## I. BACKGROUND

Inland Bulk began considering the purchase of naval propulsion engines from Cummins in July of 1997. On July 24, 1997, Wartsila NSD North America, Inc.[1] sent Inland Bulk a copy of Quotation No. 20381 ("Quotation"), which was an offer to sell the two engines under certain conditions and with certain specifications. The warranty section of the Quotation stated that Wartsila NSD's warranty obligations "are as specified in The Wartsila NSD General Sales Terms and Conditions." Joint Appendix ("J.A.") at 73. The last section of the Quotation stated, "In all other respects, Wartsila NSD General Sales Terms and Conditions will apply." J.A. at 74. No terms and conditions, however, were sent with the Quotation.

On August 11, 1997, Wartsila NSD sent Inland Bulk a revised offer labeled "Revision A."[2] J.A. at 78. Revision A offered to sell Inland Bulk the engines for $545,190, and stated that the offer would expire at the end of September of 1997. Like the Quotation, Revision A stated that Wartsila NSD's "obligations under the warranty are as specified in The Wartsila NSD General Sales Terms and Conditions." J.A. at 89. The last section of Revision A (like the Quotation) also stated, "In all other respects, Wartsila NSD General Sales Terms and Conditions will apply." J.A. at 91. This time,

however, Wartsila NSD attached terms and conditions to Revision A. The terms and conditions that were attached indisputably required arbitration for all disputes arising out of the contract:

> 7.2 All disputes arising in connection with the present Contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The arbitration proceedings shall be in the English language and will take place in Paris, France.

J.A. at 98. The terms and conditions that were included with Revision A were not titled "Wartsila NSD General Sales Terms and Conditions" — as they are referred to in the body of Revision A. Instead, they were titled "Wartsila Diesel Group General Terms and Conditions of Contract, Marine Applications / 1993-1." J.A. at 94. These terms and conditions, however, were the only terms and conditions sent with Revision A.

On April 6, 1998, Cummins sent Inland Bulk a third version of the contract called Revision B. Revision B offered to sell the engines to Inland Bulk for $558,270. This contract was identical in most respects to Revision A, but there was one key difference. Where the previous versions of the contract (the Quotation and Revision A) refer to the "Wartsila NSD General Sales Terms and Conditions," Revision B refers to the "Cummins Wartsila General Sales Terms and Conditions." J.A. at 184. No terms and conditions were sent with Revision B.

The parties came to an agreement on one of these versions of the contract on April 8, 1998. Inland Bulk assented to the contract with a purchase order form, which listed the date and the price, $545,190.

The controversy between the parties arose when Inland Bulk had problems with the engines and subsequently filed

---

[1] Defendants Wartsila NSD North America, Inc. and Cummins Engine Co. formed the joint venture Cummins Wartsila Engine Co. around the time of these negotiations.

[2] Although Revision A is dated August 8, 1997, the parties agree that the offer was not apparently sent until August 11, 1997. Appellant Br. at 5; Appellee Br. at 3.

suit against Cummins, alleging claims of breach of contract, breach of warranty, fraud, and negligence. In response, Cummins filed a motion to stay and to compel arbitration. The district court, without a written opinion, denied Cummins's motion in a three-line marginal entry order. Cummins has appealed the district court's order, and Inland Bulk has filed a motion to supplement the record.

The principal controversy on appeal is whether the contract between Inland Bulk and Cummins included the associated provision requiring arbitration. Cummins argues that the parties agreed upon Revision A and that the arbitration provision became part of that contract, and argues alternatively that Revision B would also have incorporated an arbitration provision. Inland Bulk asserts that the parties agreed upon Revision B and that the arbitration provision was not incorporated into that document, and alternatively, that Revision A did not contain an arbitration provision. For the reasons explained *infra*, we conclude that the contract included an arbitration provision, regardless of whether the parties agreed upon Revision A or Revision B.

## II. ANALYSIS

### A. Jurisdiction

The district court below had diversity jurisdiction under 28 U.S.C. § 1332.[3] We have jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(A) and (B), which authorize this court to review district court orders refusing to stay an action pending arbitration under 9 U.S.C. § 3 and denying a motion to compel arbitration under 9 U.S.C. § 4.

### B. The Motion to Supplement the Record

Before addressing the merits of this appeal, we must resolve Inland Bulk's motion to supplement the record, which was filed on March 29, 2002. Inland Bulk seeks to supplement the record with four documents that allegedly show that the parties agreed upon Revision B as their contract. None of these documents was considered by the district court at the time of its ruling. The first is an internal invoice of Cummins's, dated December 10, 1998, which states that Revision B is the proper contract between the parties. The second is a change order request from Cummins, dated September 2, 1998, also listing Revision B as the operative contract. The third piece of evidence is a copy of Revision B with the original price, $558,270, crossed out and a new price $545,190, written in.[4] Inland Bulk does not state where this copy of Revision B came from, and the document has no date on it other than the date that Revision B was sent to Inland Bulk.

The fourth and final piece of evidence is a handwritten copy of the district judge's notes from a status conference. This status conference, which took place on April 24, 2002, addressed Inland Bulk's motion in the district court to supplement the record on appeal.[5] In rejecting Inland Bulk's

---

[3]This case was originally filed in the state court of common pleas but was removed to the U.S. District Court by the defendants on the basis of diversity of citizenship.

[4]This piece of evidence also tends to support Inland Bulk's assertion that Revision B was the true contract in the following way: The purchase order form sent by Inland Bulk listed the price as $545,190, which was the price of Revision A, but not Revision B, which listed the price as $558,270. Standing alone, the purchase order form therefore suggests that Revision A was the true contract between the parties. With this piece of evidence, Inland Bulk seeks to explain away the price listed on the purchase order form, by suggesting that although Revision B's price was changed to match the price of Revision A, it was Revision B (not Revision A) that the parties were agreeing upon.

[5]Inland Bulk apparently filed contemporaneous and identical motions to supplement the record in this court and in the district court below. Under Federal Rule of Appellate Procedure 10, the district court can

motion to supplement the record, the district judge suggested that his decision on the arbitration-related issues was predicated on his belief that Revision B was the operative version of the contract.

Inland Bulk argues that we should allow the record to be supplemented with this new evidence either under Federal Rule of Appellate Procedure 10(e), the inherent powers of this court, or the rule that district courts retain jurisdiction to handle matters "in aid of the appeal." Upon reflection, we deny Inland Bulk's motion to supplement the record.

### 1. Supplementation under the Federal Rules of Appellate Procedure

Inland Bulk contends that Federal Rule of Appellate Procedure 10(e) allows the admission of these pieces of evidence. Normally, the record on appeal consists of "the original papers and exhibits filed in the district court," "the transcript of proceedings, if any" and "a certified copy of the docket entries prepared by the district clerk." Fed. R. App. P. 10(a). However, "if anything material to either party is omitted from or misstated in the record by error or accident," the rule allows "the omission or misstatement [to] be corrected and a supplemental record [to] be certified and forwarded." Fed. R. App. P. 10(e)(2). Rule 10(e) allows correction of the record either by agreement of the parties, by order of the district court, or by order of the court of appeals.

---

correct or modify the record on appeal under Fed. R. App. P. 10(e)(2)(B), just as this court can under Fed. R. App. P. 10(e)(2)(C). Both motions were attempts by Inland Bulk to have the record supplemented with the first three documents: the internal invoice, the change order form, and the copy of Revision B with the price altered by hand.

After the district court denied Inland Bulk's motion to supplement the record with these three documents, Inland Bulk then filed on May 24, 2002, in this court, an amended motion to supplement the record. It was in this motion that Inland Bulk sought to supplement the record with the fourth document — the district judge's handwritten notes from the status conference.

Fed. R. App. P. 10(e)(2). However, as is clear from the rule's wording, "[t]he purpose of the rule is to allow the [] court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals." *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982). "In general, the appellate court should have before it the record and facts considered by the District Court." *United States v. Barrow*, 118 F.3d 482, 487 (6th Cir. 1997); *cf. Sovereign News Co. v. United States*, 690 F.2d 569, 571 (6th Cir. 1982) ("A party may not by-pass the fact-finding process of the lower court and introduce new facts in brief on appeal."), *cert. denied*, 464 U.S. 814 (1983).

Rule 10(e) does not justify supplementation of the record in this case. Inland Bulk's motion to supplement the record is not aimed towards correcting some misstatement or omission in the district court's record. Inland Bulk has not even suggested that the record inaccurately reports the proceedings in the district court. Instead, Inland Bulk is simply attempting to add new material that was never considered by the district court. This is not permitted under the rule.

### 2. Supplementation Under the Equitable Power of this Court

Inland Bulk next claims that we should permit the record to be supplemented under the equitable power of this court. Several circuits have held that they have an inherent equitable authority to supplement the record on appeal under circumstances where Fed. R. App. P. 10 would not apply. *See United States v. Kennedy*, 225 F.3d 1187, 1192 (10th Cir. 2000), *cert. denied*, 532 U.S. 943 (2001); *Ross v. Kemp*, 785 F.2d 1467, 1474 n.12 (11th Cir. 1986)*; Turk v. United States*, 429 F.2d 1327, 1329 (8th Cir. 1970). Commentators have noticed this inherent equitable power as well, although they point out that the practice is only justified in rare instances. *See* Charles Alan Wright et al., *Federal Practice & Procedure* § 3956.4, at 349-51 (3d ed. 1999 & Supp. 2003) ("In special circumstances, however, a court of appeals may permit

supplementation of the record to add material not presented to the district court."); 20 *Moore's Federal Practice* § 310.10[5][f], at 310-19 (3d ed. 2000) ("In extraordinary situations, the circuit court may consider material not presented to the district court when it believes the interests of justice are at stake."). While other circuits have embraced the notion that the record can be supplemented under an appellate court's equitable authority, we as of yet have not. *See Chrysler Int'l Corp. v. Cherokee Exp. Co.*, No. 97-1003, 1998 WL 45488, at *3 (6th Cir. Jan. 27, 1998); *see also Hadix v. Johnson*, 144 F.3d 925, 945 (6th Cir. 1998) (noting that "'[b]ecause of their very potency,' the inherent powers of the courts 'must be exercised with restraint and discretion'") (citations omitted).

We will not allow Inland Bulk to supplement the record pursuant to any inherent equitable power this court may have. Even assuming such a power exists, we do not find any special circumstances present that would justify its exercise here. Most of the new evidence Inland Bulk seeks to add to the record could have been presented to the district court below, and none of it establishes beyond doubt the proper disposition of this case. *See CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000) ("A primary factor which we consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues."). Lastly, we need not consider this new information because the point Inland Bulk is trying to establish with this material — that Revision B (rather than Revision A) is the operative contract between the parties — is ultimately not material to our legal analysis, as we will explain later.

### 3. Supplementation Under the "In Aid of the Appeal" Exception

Finally, Inland Bulk makes the claim that there is a particular justification for supplementation of the record with

the district judge's handwritten notes because they were created in aid of the appeal. It is established that "the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals," but that the "district court retains jurisdiction to proceed with matters that are in aid of the appeal." *Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981), *cert. denied*, 454 U.S. 1152 (1982). Several appellate courts have allowed district courts to use this exception to memorialize oral opinions soon after a decision was rendered; that action has been considered one "in aid of the appeal." *See In Re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991) (considering a district court's written opinion that memorialized its oral ruling made one day earlier, even though the written opinion was subsequent to the appellant's filing of the notice of appeal); *Blaine v. Whirlpool Corp.*, 891 F.2d 203, 204 (8th Cir. 1989) (considering a district court's written opinion filed one week after the appellants filed their notice of appeal from the district court's oral ruling); *see generally* Charles Alan Wright et al., *Federal Practice & Procedure* § 3949.1, at 51 (3d ed. 1999). However, appellate courts have generally prevented trial courts from developing supplemental findings after the notice of appeal has been filed. *See Pro Sales, Inc. v. Texaco, U.S.A.*, 792 F.2d 1394, 1396 n.1 (9th Cir. 1986) (noting that the losing party had already filed its notice of appeal, and therefore the district court "had no power to amend its opinion [with a supplemental explanation] at the time it attempted to do so"); *see also Ced's Inc. v. U.S. EPA*, 745 F.2d 1092, 1095 (7th Cir. 1984) (coming to the same conclusion and stating that "[t]he parties to an appeal are entitled to have a stable set of conclusions of law on which they can rely in preparing their briefs"), *cert. denied*, 471 U.S. 1015 (1985). "The distinction, although sometimes blurred, is between actions that merely aid the appellate process and actions that alter the case on appeal." Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 323 (1992).

We hold that the "in aid of the appeal" exception is inapposite in this case. First, there is no indication that the district judge's comments were actually created to aid the appeal. The district judge's comments were not directed to this court for our consideration. Instead, they were off-hand, handwritten comments, never published or formalized. They were apparently made in a status conference that occurred roughly a year and a half after the notice of appeal was filed, at which the district court considered a motion to supplement the record with certain documents. There is no evidence that these comments were meant to aid our analysis. Second, we note that Inland Bulk is not prejudiced by our refusal to consider the purported legal conclusions or reasoning of the district judge created a year and a half after his ruling because in any event we give no deference to such material on de novo review. For all these reasons, Inland Bulk's motion to supplement the record must be denied.

## C.   Standard of Review and Choice of Law

We review de novo a district court's determination as to whether a dispute is arbitrable. *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 234 (6th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001). This standard of review is also appropriate for review of questions of contractual interpretation. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 454 (6th Cir. 1999).

"In determining whether the parties have made a valid arbitration agreement, 'state law may be applied *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally,' although the FAA preempts 'state laws applicable *only* to arbitration provisions.'" *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996)). "[S]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'" *Id.* at 889 (quoting *Casarotto*, 517 U.S. at 687).

In this case, the question of whether the agreed-upon contract contained an arbitration clause is resolved by basic, generally applicable precepts of Ohio contract law.[6] We note the federal policy favoring arbitration, which we take into consideration even in applying ordinary state law. *See Great Earth*, 288 F.3d at 887 (noting that "although state law may dictate the standards for generally applicable contract defenses, such as fraudulent inducement, the FAA governs the enforceability of arbitration clauses generally . . . and expresses a 'liberal federal policy favoring arbitration agreements' that must be taken into account even when state-law issues are presented") (citation omitted).

## D.   The Incorporation of the Arbitration Provision

We next consider whether the contract contained a valid arbitration provision. Although we cannot determine without doubt whether the parties agreed on Revision A or Revision B of the offer, we find the factual dispute to be irrelevant. We conclude that the parties' actions, the language of the contract documents, and the federal policy favoring arbitration all support the conclusion that the contract did incorporate an arbitration clause — regardless of whether Revision A or Revision B was the operative contract between the parties.

It is in part because the district court's decision consisted of a marginal entry order containing no findings of fact that we find it difficult to determine which version of the contract was the one actually agreed upon.[7] Cummins points to the fact

---

[6] The parties seem to agree that it is Ohio law that governs this case. Both Inland Bulk and Cummins largely refer to Ohio law, citing principally Ohio court cases. Given that neither of the parties argues that any other state's law should apply, we will assume that Ohio law is the relevant state law governing this case.

[7] We again reiterate our disapproval of marginal entry orders. First, they can violate Federal Rule of Civil Procedure 58, which generally requires that "[e]very judgment and amended judgment must be set forth

that the purchase form listed the price at $545,190. This price is the price listed in Revision A. Revision B, in contrast, listed a price of $558,270. This suggests that Inland Bulk thought it was purchasing pursuant to Revision A. On the other hand, Inland Bulk points out that the timing suggests that the parties contemplated Revision B. Cummins gave Inland Bulk the initial Quotation on July 24, 1997, and Revision A on August 11, 1997. Revision B was sent on April 6, 1998, two days before Inland Bulk returned the purchase form on April 8, 1998. The proximity between the alleged faxing of Revision B and Inland Bulk's acceptance suggests that Inland Bulk was really accepting Revision B. Inland Bulk also points to the fact that each of the offers came with an expiration date. The Quotation, for example, expired on August 8, 1997. Revision A stated that it would expire at the end of September 1997. This strongly suggests that Inland Bulk was accepting Revision B when it signed that purchase order on April 8, 1998, because Revision A had expired roughly seven months earlier. This evidence suggests that Inland Bulk actually accepted Revision B. Yet, without any factual findings in the district court, it remains difficult to tell with certainty whether the parties agreed on Revision A or B.

Ultimately, however, it does not matter whether the parties agreed on Revision A or Revision B. Regardless of whether Revision A or Revision B was the operative version of the contract, we are convinced that the arbitration clause became part of the contract. Inland Bulk admits that both Revision A

on a separate document." Fed. R. Civ. P. 58; *see also United States v. Woods*, 885 F.2d 352, 353 (6th Cir. 1989). Second, they frustrate appellate courts in our review of the district court's judgment. *See FDIC v. Bates*, 42 F.3d 369, 373 (6th Cir. 1994). This case is a perfect example. There are significant factual (as well as legal) disagreements between the parties in this case that have persisted throughout the litigation process — disagreements which the district court made no attempt to explain, much less resolve. An opinion explaining and resolving the contested factual and legal issues would have been helpful to us. Because we believe that arbitration was mandated under each version of the contract, we do not need to remand to the district court for fact-finding here.

and Revision B incorporated a set of terms and conditions, and further admits that it received a single set of terms and conditions that plainly required arbitration. Inland Bulk attempts to argue that it had no way of knowing that the set of terms and conditions it received and the set of terms and conditions referred to in Revisions A and B were the same. Inland Bulk suggests that it was confused because the two sets of terms and conditions had different titles. This argument cannot withstand scrutiny. Regardless of whether Revision A or Revision B was the final contract, Inland Bulk had every reason to infer that the terms and conditions to which the contract referred were the same terms and conditions that it had previously received. This, as we explain below, is enough to make Inland Bulk chargeable with the terms of the arbitration provision.

Arbitration cannot be forced upon parties who do not consent to it. *See Sweeney v. Grange Mut. Cas. Co.*, 766 N.E.2d 212, 218 (Ohio Ct. App. 2001) (noting that "'[a]rbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate any dispute which he has not agreed to submit'") (citation omitted); *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989) (stating that "the FAA does not require parties to arbitrate when they have not agreed to do so"). Thus, an undisclosed arbitration agreement or one hidden in an undisclosed terms-and-conditions package cannot bind Inland Bulk.

However, the law is equally clear that Inland Bulk cannot be excused from complying with the arbitration provision if it simply failed properly to read the contract. *See ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 579 (Ohio 1998) ("'A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed.'") (citation omitted); *Haskins*, 230 F.3d at 239 (holding that, even in the Title VII context, the parties are "chargeable with the knowledge of the terms

contained in the contract"). Morever, Inland Bulk is not excused from the arbitration provision just because it appears in a separate document from the rest of the contract. *See Blanchard Valley Farmers Coop., Inc. v. Rossman*, 761 N.E.2d 1156, 1162 (Ohio Ct. App. 2001) (noting that "[w]hen documents are incorporated by reference into a document, they are to be read as though they are restated in the contract"); *Haskins*, 230 F.3d at 239, 241 (incorporating, by reference, the rules of the National Association of Securities Dealers).

Taken together, these two points establish the general rule that "'one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (citing *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960)), *cert. denied*, 531 U.S. 1148 (2001); *see also Pippin v. M.A. Hauser Enters., Inc.,* 676 N.E.2d 932, 937 (Ohio Ct. App. 1996) (noting that "[a] person who signs a contract without making a reasonable effort to know its contents cannot, in the absence of fraud or mutual mistake, avoid the effect of the contract"). The parties seem to agree with the above legal analysis. They just debate what result that rule dictates given the facts of this case. Cummins argues that Inland Bulk had proper notice of the arbitration provision and is therefore bound to it; Inland Bulk argues that it had no notice of this arbitration provision, as it was never properly referenced by the contract the parties signed.

Looking at the facts of this case, we believe that it is clear that Inland Bulk was on notice that its contract with Cummins Engine would have a terms-and-conditions package that included the arbitration provision, regardless of whether they agreed to Revision A or Revision B. The original quotation referred to the Wartsila NSD terms and conditions, but no terms and conditions were given to Inland Bulk at that time. Revision A again referred in its text to the Wartsila NSD terms and conditions, and this time Cummins faxed terms and

conditions along with the document. Inland Bulk claims that Revision A did not incorporate an arbitration clause because Island Bulk never saw the "Wartsila NSD terms and conditions" Revision A referred to — Island Bulk only saw the "Wartsila Diesel Group" terms and conditions that were sent with Revision A.

This is little more than wordplay. When Cummins sent Revision A, it sent only a single set of terms and conditions (which indisputably included an arbitration provision). Moreover, Revision A referred only to a single set of terms and conditions. That alone should have given Inland Bulk notice that the terms and conditions that were attached to Revision A were actually the terms and conditions that Revision A meant to incorporate. Moreover, when Revision A was sent by facsimile to Inland Bulk, the facsimile cover sheet stated that the terms and conditions of Revision A would come attached to Revision A. This should have made it unmistakably clear to Inland Bulk that the terms and conditions that came faxed with Revision A were the ones incorporated by Revision A. Inland Bulk claims that because the attached document had a different heading than Revision A listed, Inland Bulk could safely assume that the attached terms and conditions were irrelevant. This seems, on its face, implausible. The title, "Wartsila NSD General Sales Terms and Conditions" could have been simply a quick way to refer to the document captioned "Wartsila Diesel Group General Terms and Conditions of Contract, Marine Applications / 1993-1." Even if the different titles were a product of clerical error or simple oversight, however, it is clear that Revision A was referring to the document attached to it, which contained an arbitration clause. Inland Bulk's claim that Revision A did not mean to incorporate the attached terms and conditions (which had a different heading) creates a whole host of puzzling questions. If Revision A was not really referring to the attached terms and conditions, to what was it referring? And what were the attached terms and conditions supposed to mean? The fact that Inland Bulk never asked these questions

makes it implausible that it believed that the attached terms and conditions were not incorporated by Revision A.

Ultimately, however, it is legally irrelevant that Inland Bulk might have idiosyncratically believed that its contract with Cummins did not include an arbitration provision. For, "'[c]onsistent with the notion that assent is to be judged objectively, the modern law properly construes both acts and words as having the meaning which a reasonable person present would ascribe to them in view of the surrounding circumstances.'" *Nilavar v. Osborn*, 711 N.E.2d 726, 733 (Ohio Ct. App. 1998) (quoting 1 Williston, *Contracts* 244 (4th ed. 1990)). A reasonable party in Inland Bulk's position would have thought that Revision A included an arbitration provision, and a reasonable party in Cummins's position would have construed Inland Bulk's acceptance as an acceptance of the embedded arbitration provision. Therefore, we hold that Revision A included an arbitration clause.

Similarly, we hold that Revision B also incorporated the arbitration clause. Revision B refers to the same terms and conditions that Revision A did. Where Revision A referred to the "Wartsila NSD General Sales Terms and Conditions," Revision B referred to the "Cummins Wartsila General Sales Terms and Conditions." J.A. at 184. Inland Bulk claims that Revision B was referencing a completely different set of terms than those referenced by Revision A. This argument, however, is meritless. Between the time Revision A and Revision B were sent out, the name of the company dealing with Inland Bulk changed because Cummins Engine joined with Wartsila NSD to form Cummins Wartsila. It is therefore not strange that every time that Revision A refers to "Wartsila NSD", Revision B refers to "Cummins Wartsila." The critical difference Inland Bulk identifies is simply the result of Cummins's replacement of every occurrence of "Wartsila NSD" (the initial company) with "Cummins Wartsila" (the new company). It is unclear why Inland Bulk believed that the Cummins Wartsila terms were "completely different" from the Revision A terms. Again, Inland Bulk saw only the

single set of terms and conditions that came attached to Revision A. It had every reason to believe that those same terms and conditions were the ones that Revision B was referring to and intended to incorporate. Thus, a reasonable observer would have seen Inland Bulk's acceptance as an acceptance of the arbitration clause.

As a result, regardless of whether the parties agreed upon Revision A or Revision B as the contract, we hold that the arbitration clause located in the terms-and-conditions package attached with Revision A was part of the contract between the parties. The district court therefore should have properly stayed the proceeding pending arbitration.[8]

### E.  Jurisdiction to Compel Arbitration

Inland Bulk argues, however, that even if the contract had an arbitration provision, the district court (and this court) would not be able to order the parties to arbitrate in France, the location specified in the arbitration provision. At oral argument, Cummins did not contest this point.[9]

Inland Bulk is correct; the Federal Arbitration Act prevents federal courts from compelling arbitration outside of their own district. *See* 9 U.S.C. § 4 (stating that the arbitration must take place "within the district in which the petition for an order directing such arbitration is filed"); *see also Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir.

---

[8] Since we conclude that the contract did include an arbitration provision, we need not consider Cummins's alternative claim — that Inland Bulk should be collaterally estopped from protesting the arbitration provision because it received benefits under the associated contract.

[9] At oral argument and in its brief to this court, *see* Appellant Br. at 2 n.2, Cummins acknowledged that it was not appealing the district court's denial of its motion to compel arbitration, though we note that this part of the district court's decision was specifically included in Cummins's notice of appeal.

1997) (noting that "where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4"). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards does allow federal courts to order arbitration abroad in international commercial disputes in some circumstances. *See* 9 U.S.C. § 201 *et seq*. The Convention, however, is clearly inapplicable here, because all the parties are United States citizens, and the contract involved exclusively domestic property and domestic performance. *See* 9 U.S.C. § 202 ("An agreement or award arising out of such a [commercial legal] relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."). Thus, the district judge correctly refused to compel arbitration.

### III.  CONCLUSION

In summary, we **DENY** Inland Bulk's motion to supplement the record, **AFFIRM** the district court's denial of the motion to compel arbitration, and **REVERSE** the district court's denial of the motion to stay the proceedings pending arbitration. We **REMAND** to the district court for further proceedings in accordance with this opinion, directing that a stay of proceedings pending arbitration be entered.