Henry A. McCADDIN, Plaintiff,

v.

**SOUTHEASTERN MARINE INC. d/b/a Towboat U.S. Mystic, Connecticut, Defendant.**

No. 07–CV–4303 (JFB).

United States District Court, E.D. New York.

July 22, 2008.

---

Richard W. Stone II, Waesche, Sheinbaum & O'Regan P.C., New York, NY, for plaintiff.

John K. Fulweiler, DeOrchis & Partners, LLP, New York, NY, for defendant.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Henry A. McCaddin (hereinafter, "McCaddin" or "plaintiff") brings this action against defendant Southeastern Marine, Inc. (hereinafter, "Southeastern" or "defendant") for a declaratory judgment pursuant to 28 U.S.C. § 2201 ("Federal Declaratory Act") for purposes of determining the parties' rights and liabilities with respect to the towage and/or salvage of plaintiff's boat, the PANDONNA, on July 6, 2007. Specifically, plaintiff claims that defendant, through fraudulent means, caused the plaintiff to execute a contract for salvage, when plaintiff only had agreed to have defendant tow the PANDONNA and to compensate defendant based on such service. (Compl. ¶¶ 24, 28.) Defendant has moved to dismiss the action, or, in the alternative, to stay the proceedings and compel arbitration. For the reasons stated below, defendant's motion to stay the proceedings and compel arbitration is granted.

## I. BACKGROUND

### A. The Complaint

The following allegations are taken from plaintiff's complaint, unless otherwise noted. This action concerns the arbitrability of a dispute arising out of a contract executed by McCaddin and Southeastern. McCaddin is the owner of the 42–foot motor vessel PANDONNA, a pleasure craft. (Compl. ¶ 4.) Southeastern provides towage and salvage services. (Compl. ¶ 6.)

On the morning of July 6, 2007, McCaddin and his wife departed Greenport, New York on board the PANDONNA bound for Norwich, Connecticut. (Compl. ¶ 7.) Mr. McCaddin and his wife are friends with the owner of the MARY T, another pleasure craft. (Compl. ¶ 8.) The MARY T was similarly bound, but had departed ahead of the PANDONNA. (*Id.*)

When the PANDONNA reached a position in the Long Island Sound approximately three nautical miles west of Fishers Island, her engines lost power and heavy black smoke began to emanate from her starboard engine. (Compl. ¶ 9.) Black smoke soon enveloped the vessel and forced McCaddin and his wife to jump into

the Long Island Sound. (Compl. ¶ 10.) McCaddin and his wife were picked up by another pleasure boat that happened to be in the area and were put aboard the MARY T, which by this time had also arrived and was standing by near the PANDONNA. (Compl. ¶ 11.) Soon thereafter, two United States Coast Guard vessels, a fire boat from the town of Waterford, a police environmental boat, and another pleasure boat that was traveling with the plaintiff and his wife arrived on the scene. (Compl. ¶ 12.) Two vessels owned and/or operated by the defendant also arrived in the area. (Compl. ¶ 13.)

After the smoke fully subsided, personnel from the fire boat boarded the PANDONNA, inspected her, then declared that Mr. McCaddin could return to the vessel. (Compl. ¶ 17.) David Henry, the captain of one of defendant's vessels, offered to take McCaddin back to the PANDONNA so that he could collect some of his personal belongings and vessel documents. (Compl. ¶ 18.) Vincent Schettina, a friend of the plaintiff, went back to the PANDONNA with McCaddin. (Compl. ¶ 19.) David Henry asked McCaddin if he wanted the PANDONNA towed. (Compl. ¶ 20.) McCaddin asserts that he indicated yes, provided it did not have anything to do with salvage. (Compl. ¶ 21.) McCaddin further asserts that David Henry said it was strictly a tow job, no salvage involved, but his boss still requires a signed contract. (Compl. ¶ 22.) However, David Henry contends that he specifically stated that the nature of the services was salvage. (Capt. David J. Henry Decl., ¶ 3.) McCaddin asserts that he explained that he could not read anything because he had lost his eyeglasses. (Compl. ¶ 23.) David Henry contends that McCaddin never indicated that he was unable to read the contract. (Capt. David J. Henry Decl., ¶ 3.) Thereafter, David Henry towed the PANDONNA

approximately 8 nautical miles to Noank, Connecticut. (Compl. ¶ 26.)

The Contract, which is annexed to the complaint, is a two-page contract that states at the top of the page, in bold, large-size font, "STANDARD FORM YACHT SALVAGE CONTRACT." Paragraph six of the contract is an arbitration clause which states:

> In the event of any dispute regarding this salvage or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding local arbitration utilizing individual(s) experienced in maritime and salvage law. The BOAT/U.S. Yacht Salvage Arbitration Plan, though not required, is available as a public service through Boat Owners Association of the United States wherever the parties agree to its use. In the event Owner is uninsured for payment of these Services, Salvor may, at its election, agree with Owner to use any agreeable arbitration system or to proceed with all available legal remedies to recover sums believed due and owing.

### B. Procedural History

Plaintiff filed a complaint in this Court on October 16, 2007. On February 4, 2008, defendant filed a motion to dismiss or, in the alternative, to stay proceedings pending arbitration. Oral argument was held on May 27, 2008.

## II. STANDARD OF REVIEW

### A. Motion to Compel Arbitration

██ The Court must evaluate a motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2000), under a standard similar to the standard for a summary judgment motion. *See Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir.2003) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d

51, 54 n. 9 (3d Cir.1980)); *Doctor's Assocs. v. Distajo,* 944 F.Supp. 1010, 1014 (D.Conn.1996), *aff'd,* 107 F.3d 126 (2d Cir. 1997); *see also Mazza Consulting Group v. Canam Steel Corp.,* No. 08–CV–38 (NGG), 2008 WL 1809313, at *1 (E.D.N.Y. Apr. 21, 2008). "When such a motion is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mazza Consulting Group,* 2008 WL 1809313, at *1. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun,* 316 F.3d at 175 (citing 9 U.S.C. § 4).

## III. DISCUSSION

### A. Applicability of the Federal Arbitration Act

■ The contract at issue is governed by the FAA. The FAA provides in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. As the Second Circuit has explained: "The Act [*i.e.,* the FAA] defines 'maritime transactions' as matters 'embraced within admiralty jurisdiction' and 'commerce' as including 'commerce among the several States or with foreign nations.' *Id.* at § 1. Ordinarily, agreements to arbitrate salvage disputes fall within these provisions." *Jones v. Sea Tow Servs.,* 30 F.3d 360, 364 (2d Cir.1994).

■ The FAA also generally requires that courts resolve issue of arbitrability in favor of arbitration. *See Garten v. Kurth,* 265 F.3d 136, 142 (2d Cir.2001); *see also CPR (USA) Inc. v. Spray,* 187 F.3d 245, 254 (2d Cir.1999) ("The existence of a broad agreement to arbitrate .... creates a presumption of arbitrability, which is overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' ") (quoting *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir.1997)); *accord Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 666 (2d Cir.1997). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement provided the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

### B. Arbitrability

■ Plaintiff does not allege any fraud as it relates to the arbitration clause itself. Instead, plaintiff asserts that, due to fraud in the execution of the contract, the contract is void and, thus, any agreement to arbitrate in the contract is unenforceable. In support of his position, plaintiff has submitted a declaration in which he states

the following: "David Henry asked me if I wanted the PANDONNA towed. I told him yes, so long as it didn't have anything to do with salvage. David Henry told me that it was 'strictly a tow job' and that 'no salvage' was involved, but his boss required him to have me sign a contract. I told him that I could not read the document because I lost my eyeglasses. David Henry assured me that the document he was asking me to sign was 'strictly a towing contract' and had 'nothing to do with salvage.' I relied on David Henry's representation that the document reflected our agreement for straight towage and signed the form. Neither I nor Mr. Schettina read the document. I was not given a copy of the document." (Capt. David J. Henry Decl., ¶ 8.) Thus, plaintiff argues that, based upon these allegations, the threshold issue of fraud in the execution of the contract must be tried in this court, and not by the arbitrator. Defendant contends that plaintiff has not alleged or provided any evidence of fraud in the execution, but rather is asserting fraudulent inducement through these allegations, which is properly addressed by the arbitrator.

As set forth below, although the Court recognizes that under well-settled Second Circuit law any triable issues of fact regarding fraud in the execution must be addressed by the court and not the arbitrator, this Court concludes that plaintiff has failed to allege, or provide any evidence creating a material issue of fact, on any fraud in the execution of this contract. Instead, plaintiff's allegations and evidence clearly relate to fraudulent inducement, which could render the contract voidable, but such issues are within the proper realm of the arbitrator and not the Court.

In *Prima Paint Corporation v. Flood Conklin Manufacturing Company*, the Supreme Court addressed "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." 388 U.S. 395, 402, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Specifically, the Court held that "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." *Id.* The Court further stated "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 403–04, 87 S.Ct. 1801.

In addition to courts addressing claims of fraud directed to the arbitration clause itself, the Second Circuit also has held that courts, rather than arbitrators, should address claims related to whether there was a contract in the first place—that is, whether there was fraud in the execution of the contract. For example, in *Interocean Shipping Company v. National Shipping & Trading Corporation*, 462 F.2d 673, 676–77 (2d Cir.1972), the Second Circuit held that, where there were a number of written exchanges back and forth between the parties regarding the terms of an agreement, the question of whether there was ever a meeting of the minds in the first instance regarding the essential terms of an agreement should be decided by the court. This limited category of cases, where there is evidence that the contract is void because it produced no legal obligation, is separate and distinct from cases where the claim is that the contract is voidable because of some fraud

in the inducement of the contract. The former category is reviewable by the Court, while the latter should be reviewed by the arbitrator. *See Adams v. Suozzi,* 433 F.3d 220, 227 (2d Cir.2005) ("Only if a contract is 'void,' and not 'voidable,' can a party challenge the enforceability of an arbitration clause without alleging a particular defect with that clause.").

This distinction, which harmonizes *Prima Paint* and *Interocean,* was summarized by the Second Circuit in *Sphere Drake Insurance Limited v. Clarendon National Insurance Company,* 263 F.3d 26 (2d Cir.2001). In particular, the Second Circuit explained:

> If a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue pursuant to 9 U.S.C.A. § 4 and the rule of *Interocean.* However, under the rule of *Prima Paint,* if a party merely alleges that a contract is voidable, then, for the party to receive a trial on the validity of the arbitration clause, the party must specifically allege that the arbitration clause is itself voidable. Accordingly, to defeat the arbitration clauses in the contracts at issue, [plaintiff] must alleged that the contracts as a whole are void or that the arbitration clauses in the contracts are voidable. Of course, it is not enough for [plaintiff] to make allega-

tions—[plaintiff] must also produce some evidence substantiating its claim. *Id.* at 32; *accord Denney v. BDO Seidman, L.L.P.,* 412 F.3d 58, 67–68 (2d Cir. 2005).[1]

Given that courts can review whether a contract with an arbitration clause is void but must leave to arbitrators to determine whether a contract is voidable, it is critical to understand the distinction between the two. The Second Circuit has explained that "[f]raud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.' " *Hetchkop v. Woodlawn at Grassmere, Inc.,* 116 F.3d 28, 31–32 (2d Cir.1997) (quoting Restatement (Second) of Contracts § 163 comment a (1981) ("Restatement")). As the Second Circuit has noted, "[s]uch contracts are rare." *Sphere,* 263 F.3d at 31; *see also* E. Farnsworth, Contracts § 4.10 (2d ed. 1990) ("In rare cases .... the misrepesentation is regarded as going to the very character of the proposed contract itself, *as when one party induces the other to sign a document by falsely stating it has no legal effect.* Such a misrepresentation is said to go the 'factum' or 'execution.' ") (emphasis added).

■■■ "In order to prevail on such a defense, a party must show 'excusable ignorance of the contents of the writing signed.' " *Hetchkop* 116 F.3d at 32.

---

1. In a recent decision, *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), in which the Supreme Court held that a claim that a purportedly usurious contract containing an arbitration provision was void for illegality was to be determined by an arbitrator and not the court, the Court recognized (and explicitly declined to address) this body of cases in various jurisdictions which allows for courts, rather than arbitrators, to decide fraud in the

execution issues. Specifically, the Court stated that "[o]ur opinion today ... does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which told that it is for courts to decide whether the alleged obligor ever signed the contract, ... whether the signor lacked authority to commit the alleged principal, ... and whether the signor lacked the mental capacity to assent...." *Id.* at 444, 126 S.Ct. 1204 (citations omitted).

"Proof that a party secretly substituted one type of document for another is evidence of fraud in the execution." *Id.* (citing *Operating Eng'rs Pension Trust v. Gilliam,* 737 F.2d 1501, 1504 (9th Cir. 1984)); *see also Trs. of Welfare Fund and Pension Fund of Local No. One, I.A.T.SE v. A. Terzi Prod.,* No. 97 Civ. 8262(MGC), 1999 WL 33870, at *2 (S.D.N.Y. Jan. 25, 1999) ("Excusable ignorance may be proven by presenting evidence that someone secretly changed an important term of the contract before the ignorant party signed it, and that the ignorant party lacked a reasonable opportunity to learn of the change before signing."). "Proving excusable ignorance requires a showing that the party satisfied its basic responsibility of reading what it signed." *Bricklayers and Allied Craftworkers Local 2, Albany v. C.G. Yantch, Inc.,* 316 F.Supp.2d. 130, 147 (N.D.N.Y.2003) (citing *Hetchkop,* 116 F.3d at 34).

■ In contrast, "[f]raud in the 'inducement' indicates a misrepresentation that goes to the subject matter underlying the transaction, but does not challenge the fact that an agreement of some kind was reached." *Gen. Media, Inc. v. Shooker,* No. 97 Civ. 510(DAB), 1998 WL 401530, at *6 n. 6 (S.D.N.Y. July 16, 1998).

Illustrations to Sections 163 and 164 of the Restatement (Second) of Contract further clarify the difference between fraud in the execution and fraud in the inducement. For example, with respect to fraud in the execution, the Restatement provides the following illustration:

"A and B reach an understanding that they will execute a written contract containing terms on which they have agreed. It is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the belief that it is the one he has read. B's apparent manifestation is not effective."

Restatement (Second) of Contracts, § 163, illustration 2. This is an example of fraud in the execution which would result in a void contract and evidence of such an issue, in the context of a challenge to an arbitration provision in such agreement, should be resolved by the court.

Section 164 of the Restatement sets forth the basis for a claim of fraud in the inducement. In particular, "[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Restatement (Second) of Contracts, § 164. Illustration three to this section states:

"A and B agree that A will buy a tract of land from B for $100,000 and will assume an existing mortgage of $50,000. In reducing the agreement to writing, A intentionally omits the provision for assumption but tells B that the writing correctly expresses their agreement. B does not notice the omission and is induced by A's statement to sign the writing. The misrepresentation is both fraudulent and material, and the contract is voidable by B."

§ 164, illustration 3. Such a claim of fraudulent inducement must be submitted under *Prima Paint* to the arbitrator.

Although plaintiff argues that he is claiming fraud in the execution of the contract that must be addressed by the court rather than the arbitrator, the Court disagrees. *See, e.g., Patrick Higgins & Co., Inc. v. Brooke Corp.,* No. 06–411–JAR, 2007 WL 2317123, at *15 (D.Kan. Aug. 9, 2007) (compelling arbitration and concluding that, despite use of the term "fraud in the factum" by plaintiffs, "[p]laintiffs have not alleged any type of fraud that would

make the contracts at issue void and thus have not met their burden to demonstrate the existence of a genuine issue of material fact as to the making of the agreement to arbitrate"). An examination of his allegations in the complaint clearly demonstrates that his claims fall squarely within the ambit of fraudulent inducement with respect to the contract as a whole, not fraud in the execution, and thus are properly left to the arbitrator. In particular, the complaint alleges the following:

> David Henry fraudulent represented to Mr. McCaddin, in order to procure his signature on the contract document, that the document was strictly a towing contract and had nothing do to with salvage. The document represented by David Henry as a straight towing contract and signed by Mr. McCaddin in reliance on David Henry's fraudulent representation is attached hereto as Exhibit A. Defendant knew or had reason to know that Mr. McCaddin understood Exhibit A to be a straight towing contract when he signed it.

(Compl. ¶¶ 24–25.) In other words, the claim is that McCaddin signed a contract for salvage because he was induced by, and relied upon, the allegedly fraudulent representation by McCaddin that the contract was for towing. This is a classic allegation of fraudulent inducement under well-settled contract principles. In fact, the allegations are indistinguishable from the above-referenced example of fraudulent inducement contained in illustration three to the Restatement. *See* Restatement (Second) of Contracts, § 164 Illustration Three ("In reducing the agreement to writing, A intentionally omits the provision for assumption but tells B that the writing correctly expresses their agreement. B does not notice the omission and is induced by A's statement to sign the writing. The

misrepresentation is both fraudulent and material, and the contract is voidable by B."); *see also Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1300 (3d Cir.1996) ("Fraud in the inducement .... does not involve terms omitted from an agreement, but rather allegations of oral representations on which the other party relied in entering into the agreement, but which are contrary to the express terms of the agreement. It is clear that [plaintiff] alleges fraud in the inducement in this case, despite its protestations to the contrary."). Thus, this issue of fraudulent inducement in entering the contract clearly should be decided by the arbitrator.

Despite plaintiff using the label "fraud in the execution" in his opposition papers in an attempt to assert that the Court should decide these claims, there is nothing in the complaint or submissions of plaintiff that relates to fraud in the execution. Plaintiff has provided no facts to show fraud in the execution. Plaintiff concedes in his complaint that he did sign the contract containing the arbitration clause. There is no allegation, for example, that he reviewed one contract and then the defendants substituted a different document before he signed it. There is no allegation that his signature was forged. *See, e.g., Opals on Ice Lingerie v. Bodylines, Inc.,* No. 99 Civ. 3761, 2002 WL 718850, at *5 (E.D.N.Y. Mar. 5, 2002) (holding that fraud in the factum occurred, where forgery of a party's signature, renders underlying contract void and arbitration may not be compelled). There is no allegation that he lacked the mental capacity to sign such contract. There is no allegation of duress. In short, there are no allegations, and certainly no evidence, to support any claim of fraud in the execution. Plaintiff is simply trying to cloak a fraudulent inducement claim in the language of fraud in the

execution.[2]

The Court also notes that, in a conclusory sentence in the complaint, in an effort to explain why he signed the salvage contract based upon the fraudulent representations of defendants, plaintiff also asserts that he could not read the contract at the time because he lost his eyeglasses. To the extent that plaintiff argues that this allegation raises a fraud in the execution issue, the Court disagrees. As a threshold matter, plaintiff has provided no evidence regarding the nature of any eyesight problems that he alleges prevented him from reading the contract. Moreover, as seen in a copy of the contract annexed to the complaint, the words "YACHT SALVAGE CONTRACT" appear in large bold letters at the top of the contract. In addition, plaintiff signed the contract and filled in his address on the second page.[3] In short, plaintiff has produced no evidence whatsoever, in the form of affidavits or otherwise, to support the nature and extent of any eye problems or how any such problems impacted his ability to read the contract.

More importantly, even if plaintiff had offered evidence on this issue and even assuming *arguendo* the defendant had an eye problem that prevented him from being able to review the contract, plaintiff's assertion regarding his eyeglasses would still be insufficient to warrant a trial on fraud in the execution of the contract. As discussed above, to have a plausible fraud in the execution claim, the challenging party must demonstrate that he or she was prevented in some way from knowing or having a " 'reasonable opportunity to know of its character or essential terms.' " *Hetchkop*, 116 F.3d at 31–32. Even assuming that plaintiff had eyesight issues on the date he executed the contract, such an allegation is insufficient evidence as a matter of law to support a fraud in the execution claim. *See, e.g., Steelmasters, Inc. v. Local Union 580 of Intern. Assoc. of Bridge, Structural, Ornamental and Reinforcing Iron Workers*, No. 05–CV–259, 2008 WL 312096, at *5 (E.D.N.Y. Feb. 1, 2008) (finding that petitioner's claim that it was deprived of the opportunity to examine the one page Short Form Agreement or that it did not understand its terms was not a sufficient basis to show fraud in the execution or other special circumstances which would make the

---

**2.** The cases cited by plaintiff, in which courts found that the claims related to fraud in the execution, are factually distinguishable from his allegations in the instant case because those cases involved issues of forgery, substitution of different documents after a person reviewed the contract, or other similar conduct which is not alleged here. *See Hetchkop*, 116 F.3d at 33 (allegation that agreement was void because of the "surreptitious substitution" of documents after the party had reviewed the contract); *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 999 (11th Cir.1986) (allegation that "either their signatures were furtively obtained or the signatures appearing on the securities account agreements were forged, as part of a scheme .... to steal their money and ultimately flee the country"); *Operating Eng'rs. Pension Trust*, 737 F.2d at 1504–05. (allegation that party did not realize they were signing an agreement at all, but rather believed he was

filling out an application to become a member of the union as an owner-operator). Here, unlike these cases, plaintiff clearly knew he was signing a contract and there is no allegation that his signature was forged or that documents were substituted in the contract after he read it; in fact, he concedes he signed it without reading it in the first place. Instead, he is claiming he relied on the misrepresentations of the defendant about what was contained in the contract. As noted *supra*, such a claim is one of fraudulent inducement, not fraud in the execution.

**3.** Captain Henry McCaddin attested that not only did McCaddin review the document, but he then passed it to his male friend or relative who also reviewed it and stated "It's a standard contract." (Capt. David J. Henry Decl., ¶ 5.)

agreement void). There was nothing preventing plaintiff in such a situation from declining to sign the contract until he had an opportunity to read it with his eyeglasses or having someone else (such as his friend or relative who was at the scene) read the contract to him. The failure to have eyeglasses to read a contract does not constitute "excusable ignorance" that can void a signed contract and relieve a party of its obligation from the terms of the contract. To hold otherwise would allow parties in an arms-length contract to escape their contractual obligations because of all types of circumstances—including bad lighting when they were reading the contract, small print size in the contract, big words in the contract, etc.—that they could have remedied prior to signing the contract. That is contrary to well-settled state-law contract principles and this Court concludes that no fraud in the execution claim exists, absent some extraordinary circumstance that is not present in the allegations by plaintiff in the instant case.[4] *See, e.g., Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162–63, 170 N.E. 530 (1930); ("Ordinarily, the signer of a deed or other instrument .... is conclusively bound thereby.... If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him."); *Chem. Bank v. Geronimo Auto Parts Corp.*, 225 A.D.2d 461, 639 N.Y.S.2d 340, 341 (N.Y.App.Div.1996) (granting summary judgment against defendant and finding without merit defendant's claim that he was not bound by the contract because of his "alleged unfamiliarity with the English language and the al-

leged misrepresentations to him as to the nature of the agreement"); *Feinblum v. Liberty Mut. Ins. Co.*, No. 02–5085, 2003 WL 21673620, at *2 (S.D.N.Y. July 16, 2003) ("[W]hen a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations."); *accord Myskina v. Conde Nast Publ'ns., Inc.*, 386 F.Supp.2d 409, 414–15 (S.D.N.Y. 2005) (collecting cases); *see generally Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003) ("[T]he law is .... clear that Inland Bulk cannot be excused from complying with the arbitration provision if it simply failed properly to read the contract."); *Arce v. U–Pull–It Auto Parts, Inc.*, No. 06–5593, 2008 WL 375159, at *8 (E.D.Pa. Feb. 11, 2008) ("In this case, Plaintiff cannot claim ignorance to avoid the ramifications of his signed release. Although Plaintiff could not read the release himself, he could either asked Pedro Rosado, who read both English and Spanish, to translate the writing on the sheet or inquired as to whether a Spanish-speaking employee of the junkyard was available to explain the document."); *Gimpel v. Host Enters., Inc.*, 640 F.Supp. 972, 975 (E.D.Pa.1986) ("We find no merit in [plaintiff's] argument that he 'couldn't' read the contract before he signed it. Although he did not have his reading glasses with him when he arrived at the rental office, he could have requested that either the friend who accompanied him or [defendant's] employee read the agreement to him before he signed it.").[5]

---

4. As the Second Circuit has noted, "[w]hen contract formation is at issue in an FAA case, we generally apply state-law principles." *Adams*, 433 F.3d at 227.

5. Of course, this Court's holding does not preclude the arbitrator from considering any allegations regarding eye problems, in conjunction with the other allegations by plain-

In sum, as the Second Circuit held in *Sphere Drake Insurance Limited v. Clarendon National Insurance Company,* a defense of fraudulent inducement "renders contracts voidable, but not void. And, under *Prima Paint,* a party is not entitled to a trial on the arbitrability of a voidable contract unless the party alleges that the arbitration clause itself is voidable and provides some evidence in support of its allegation." 263 F.3d at 31–32 (internal citations omitted). Moreover, the Court recognizes the warning by the Second Circuit in *Hetchkop* that "[i]t was now within the province of the district court to reject [the opposing party's] version of the events or to refuse to draw permissible inferences in [the opposing party's] favor." 116 F.3d at 33. Here, plaintiff has failed to allege facts, or supply evidence, that are sufficient to create a material issue of fact on whether there was fraud in the execution of the contract at issue here or other special circumstances that would have rendered the contract void (rather than voidable). Therefore, the arbitration clause is separable from the contract as a whole and is a proper matter for arbitration.

### C. Scope of Arbitration Clause

■ Plaintiff also argues in a conclusory manner in his opposition papers that, even if the Court concludes that his claim is one of fraudulent inducement (not fraud in the execution), the arbitration clause in this case is not broad enough to encompass such issues. As set forth below, the Court finds that argument to be completely without merit.

■ As noted *supra,* federal law favors arbitration as a form of dispute resolution. *See, e.g., Hartford Accident and Indemnity Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir.2001) ("There is a strong federal policy favoring arbitration

as an alternative means of dispute resolution."). Therefore, "[i]n accordance with that policy, where ... the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." *Id.*

■ The arbitration clause at issue in this case provides, in relevant part, that:

> In the event of *any dispute regarding this salvage* or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding local arbitration utilizing individual(s) experienced in maritime and salvage law.

(Compl., Ex. A.) (emphasis added). Despite plaintiff's contention to the contrary, the phrase "any dispute regarding this salvage" clearly constitutes a broad arbitration clause. "[W]here, as here, the arbitration clause is broad, any claim that falls within its scope will be considered arbitrable absent compelling proof to the contrary." *Int'l Union of Elevator Constructors v. Nat'l Elevator Indus., Inc.,* 772 F.2d 10, 13 (2d Cir.1985) (citing *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) and *Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 886 (2d Cir.1982)); *see also Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987) ("We will order arbitration if the arbitration clause is broad and if the party seeking arbitration has made a claim that on its face is governed by the contract, even if the claim appears to be frivolous."). " 'Proof to the contrary' requires language that is 'clear and unambiguous' or 'unmistakably clear.' " *Id.* (citing *Gangemi v. Gen. Elec. Co.,* 532 F.2d 861, 866 (2d Cir.1976)).

tiff, in addressing the merits of any fraudulent      inducement claim.

The claims at issue here clearly fall within the broad scope of the arbitration clause—that is, plaintiff's allegation that he was fraudulently induced through misrepresentations by defendant into entering the agreement for salvage services (rather than towing) and, thus, should not have to pay the fees under the contract. Such claims unquestionably constitute a "dispute regarding this salvage." As such, the Court finds that plaintiff's claims fall within the scope of the arbitration clause and that plaintiff has failed to present any proof to the contrary. Accordingly, plaintiff's attempt to avoid arbitration on this basis is rejected.

### D. Dismissal

The remaining question is whether the Court should dismiss the case or stay the case pending arbitration. As set forth below, the Court concludes that the case should be stayed while the Court compels arbitration.

This Court recognizes that some courts have held that where "none of plaintiff's claims remains to be resolved by the court, and therefore there is no reason to stay—rather than dismiss—this action." *Mahant v. Lehman Bros.*, No. 99 Civ. 4421(MBM), 2000 WL 1738399, at *3 (S.D.N.Y. Nov. 22, 2000); *see also Mazza Consulting Group, Inc.*, 2008 WL 1809313, at *6; *Perry v. N.Y. Law School*, No. 03 Civ. 9221(GBH), 2004 WL 1698622, at *4 (S.D.N.Y. Jul. 28, 2004). However, in this instance, the Court believes that the more appropriate action is to stay the proceedings and compel arbitration, rather than grant a dismissal. *See Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir.2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright.") (internal quotations and citations omitted); *see also Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir.2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to stay the proceeding and compel arbitration is GRANTED. The motion is DENIED in all other respects.

SO ORDERED.