**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0185n.06

**No. 10-4362**

**FILED**

***Feb 15, 2012***

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff-Appellee,             )
                                        )        ON APPEAL FROM THE UNITED
v.                                      )        STATES DISTRICT COURT FOR THE
                                        )        SOUTHERN DISTRICT OF OHIO
ROGER S. FAULKENBERRY,                  )
                                        )
        Defendant-Appellant.            )

Before: BOGGS, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. Following a reversal and remand by this court, this case returns to us as a challenge to the constitutionality of the sentence the district court imposed at resentencing. Faulkenberry contends that the district court's judgment on resentencing violates his Fifth Amendment double jeopardy and due process rights. For the following reasons, we disagree and affirm.

I.

The prior panel's opinion in *United States v. Faulkenberry*, 614 F.3d 573, 577-580 (6th Cir. 2010) details the factual background regarding Faulkenberry's underlying crimes. In brief, Faulkenberry worked for nearly a decade at National Century Financial Enterprises ("NCFE"), eventually becoming NCFE's Executive Vice-President for Client Development. NCFE was in the

business of purchasing accounts receivable of health-care providers at a discount and for a fee. These transactions gave providers immediate cash flow and, in theory, allowed NCFE to profit from the discounts and fees.

During Faulkenberry's time at NCFE, however, the company's executives hatched a complex scheme that defrauded the company's investors of approximately $2.4 billion. The scheme included, among other things, uncollateralized advances (i.e., advances made without obtaining eligible accounts receivable in return) from NCFE's reserve accounts to client entities that NCFE executives partially owned, while manipulating balances among the reserve accounts to hide their scheme. False financial reporting and false representations to investors allowed NCFE to obscure the scam, making it appear that NCFE's executives ran the company as a conservative and profitable business rather than as a piggy bank for their personal investments. The scheme left NCFE dangerously undercollateralized. Banks eventually grew suspicious and, in September 2002, refused to allow NCFE to transfer money between its reserve accounts. Less than two months later, the scheme collapsed and NCFE filed for bankruptcy.

Faulkenberry participated directly in the fraud in two ways. First, as Vice President, he authorized cash advances from NCFE's reserve accounts to at least one client in which he held a personal financial stake. Second, as a primary contact for both investors and ratings agencies, his false statements and assurances propped up NCFE's business practices, allowing NCFE to maintain an unwarranted Triple A credit rating and attract new investors despite the firm's dire financial straits.

In addition, Faulkenberry possessed detailed knowledge of the nature and extent of the fraudulent scheme, received numerous memoranda and emails from co-defendants outlining the shortages in the reserve accounts, and sat on a credit review committee whose minutes reflect deliberate manipulation of figures to attract additional investors.

After NCFE's collapse, the government brought an eight-count indictment against Faulkenberry. Faulkenberry pled not guilty, but a jury convicted him on all counts. Faulkenberry's PSR used the 2007 edition of the United States Sentencing Commission Guidelines Manual. It advised that when a "defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived," as Faulkenberry was, "the counts shall be grouped pursuant to subsection (c) of § 3D1.2 (Groups of Closely-Related Counts)." *See* USSG § 2S1.1, cmt. n.6 (2007). In grouping the fraud, money laundering, and conspiracy counts for Guidelines purposes, the district court explained at Faulkenberry's initial sentencing that his crimes were closely linked:

> All of the counts were subsequently grouped pursuant to 3D1.2(c), which deals with groups of closely-related counts, because *all of these counts were indeed closely related*. According to 3D1.3(a), when counts are grouped pursuant to 3D1.2(a) through (c), the highest offense level of the counts in the group is used. In Mr. Faulkenberry's case, the calculations for Counts 17 and 24, money laundering, produced the most serious offense level and were, therefore, used for calculation purposes.

The district court calculated a total offense level of 49 (because the loss exceeded $400 million), but reduced it to 43 because that is the highest offense level used in Guidelines calculations. With

Faulkenberry's total offense level of 43 and criminal history category of I, the Guidelines advised life imprisonment.

After completing the Guidelines calculations, the district court set forth its reasons for sentence using the framework of the § 3553(a) factors. As to the nature and circumstances of the offense, the district court stated:

> Mr. Faulkenberry has been convicted of eight counts of conspiracy, securities fraud, wire fraud and money laundering. He and other convicted senior executives perpetrated a massive fraud that spanned nearly a decade, and they went to enormous lengths to disguise and conceal their true operations from the outside world.

Examining the seriousness of these offenses, the district court went on:

> [T]he magnitude of the NCFE fraud places it at the top of a fraud perpetrated involving a privately-held corporation, and Mr. Faulkenberry was a senior executive at NCFE where he worked for nine years.

> The evidence at trial established that he knew about the fraud, participated in it principally by lying to investors about how NCFE actually used its money. The evidence showed that Mr. Faulkenberry regularly received internal e-mails and memos discussing NCFE's rampant unsecured lending to health care providers.

Finally, in announcing Faulkenberry's term of incarceration, the district court decided that while it would vary downward from the Guidelines' suggestion of life imprisonment—and from the probation office's recommendation of 70 years' imprisonment—Faulkenberry's conduct warranted a substantial prison sentence:

>            [I]n light of the scope and complexity of the fraud, Mr. Faulkenberry's role as
> the principal liaison to the investors, the extraordinary lengths that Mr. Faulkenberry
> and his co-defendants went to to conceal their real use of investor dollars, the billions
> of losses that investors suffered, his intimate knowledge of the scheme, and his role
> on the executive committee as someone who worked to propagate the scheme and to
> sustain the scheme, the Court concludes that a sentence of 120 months, or 10 years,
> of incarceration is sufficient but not greater than necessary to punish Mr.
> Faulkenberry, to deter similar criminal conduct, to promote respect for the law and to
> otherwise satisfy the goals of sentencing. The Court finds that this sentence is in
> keeping with the sentences imposed against other criminal defendants convicted of
> crimes similar to Mr. Faulkenberry's.

The district court then imposed a ten-year term of incarceration, "composed of 60 months on Counts 1 [conspiracy] and 4 through 7 [securities fraud] and 11 [wire fraud], and 120 months on Counts 17 [conspiracy to commit money laundering] and 24 [money laundering], each count to be served concurrently." It also ordered Faulkenberry to pay nearly $2.4 billion in restitution.

Faulkenberry appealed, challenging the sufficiency of the evidence supporting each conviction. This court affirmed Faulkenberry's fraud convictions but reversed his convictions on the money-laundering counts. The prior panel found that although the evidence showed that Faulkenberry participated in transactions "structured" to conceal the nature of the funds, the evidence fell short of showing that concealment was actually an "animating purpose" as required under the federal money laundering statute. Remanding the case for resentencing, the panel explained:

>            Based upon his convictions in the district court, the Sentencing Guidelines
> recommended that Faulkenberry be sentenced to life imprisonment. By that measure
> he received a light sentence: The district court chose to run his sentences concurrently
> rather than consecutively, so as a practical matter Faulkenberry was sentenced to only
> ten years. Moreover, his money-laundering sentences were functionally the operative

ones, since those sentences, unlike the others, ran for ten rather than five years. And the money-laundering convictions are the ones we reverse today.

But that does not mean that this court should reduce Faulkenberry's sentence to five years. When considering a multiple-count criminal judgment that produced "interdependent" sentences, we may "vacate all sentences even if only one is reversed on appeal." We possess this "supervisory power to vacate and remand" even when the parties do not challenge the defendant's sentences.

Having reviewed the sentencing transcript, we are convinced that the district court imposed interdependent sentences here. Had the district court known that the money-laundering convictions were invalid, it might have chosen to make some of the other sentences consecutive rather than concurrent. We therefore exercise our discretion to remand the case to allow the district court to determine, in the first instance, what Faulkenberry's sentence should be in light of our decision.

614 F.3d at 590-91 (internal citations omitted).

On remand, Faulkenberry argued that resentencing him on the remaining fraud counts would violate his rights under the Double Jeopardy clause of the Fifth Amendment. The district court stated in its opinion and order that it was "obliged to follow" the prior panel's "finding that the sentences were interdependent;" it thus rejected Faulkenberry's challenge, since interdependent sentences do not implicate the Double Jeopardy Clause. The district court also recognized, however, that the prior panel's opinion required it "to reconsider the appropriate sentences 'in the first instance'" for the remaining counts. The court then considered anew "the cumulative criminal behavior that remains now that the money laundering convictions have been overturned. In other words, [the district court]

will look to the totality of the facts and the remaining convictions in order to determine the appropriate sentence."

The district court then calculated Faulkenberry's Guidelines range to be, as before, life imprisonment because his total offense level (now 47 instead of 49) still remained above the Guidelines maximum. The court again concluded that a total term of incarceration of 120 months was "sufficient, but not greater than necessary," to achieve the sentencing goals set forth in § 3553(a). The district court's reasoning closely mirrored the explanation it provided at Faulkenberry's original sentencing, including "the extraordinary lengths that Faulkenberry and his co-defendants went to conceal their real use of investor dollars." The district court structured the sentence so that Faulkenberry served counts 1 (conspiracy) and 4 (securities fraud) consecutively rather than concurrently.

This appeal followed.

## II.

Faulkenberry now challenges the district court's judgment on resentencing, claiming that the court's shift from consecutive to concurrent terms violated his double jeopardy and due process rights.

The Double Jeopardy Clause of the Fifth Amendment states: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Generally, this clause prohibits

the government from sentencing a defendant multiple times for the same offense: "[W]hen the Government has already imposed a criminal penalty and seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding." *Jones v. Thomas*, 491 U.S. 376, 393 (1989) (quoting *United States v. Halper*, 490 U.S. 435, 451 n.10 (1989)). The clause only applies, however, where the outcome of the later sentencing proceeding upsets a defendant's legitimate expectation of finality in his original sentence. *See United States v. Husein*, 478 F.3d 318, 338 (6th Cir. 2007). If the defendant is or should be aware at sentencing that the sentence may be increased, then he lacks a legitimate expectation of finality. *Id.*

Faulkenberry relies on our opinion in *Husein* to support his double jeopardy challenge. In *Husein*, the district court sentenced the defendant to one day in prison followed by 270 days of home confinement—substantially below the Guidelines range of 37-46 months' imprisonment—in light of her "extraordinary family circumstances," namely her need to care for her ailing father. *Id.* at 321. When Husein's father died four months after sentencing, the government appealed the district court's sentence, arguing, among other things, that the death of Husein's father obviated the stated justification for a downward variance. The Double Jeopardy Clause, we decided, barred the sentencing change the government sought because "nothing in the record indicates that Husein was aware at the time of sentencing that her sentence could 'permissibly be increased' or otherwise transformed from noncustodial to imprisonment" by future events. *Id.* at 339.

Faulkenberry argues that the district court similarly "increased" his sentence. He frames the district court's judgment on remand as "doubling" his original sentences for wire and securities fraud. But viewing the terms of imprisonment as a whole, the district court sentenced Faulkenberry to exactly the same total length of incarceration (ten years) on remand as it had originally. Moreover, the district court imposed exactly the same sentences on each individual count on remand as it did originally—five years on each of the fraud-related counts. The only difference is that the court restructured the sentences of the conspiracy count and one of the securities fraud counts so that they ran consecutively rather than concurrently. Faulkenberry can prevail only by showing that this restructuring of his sentence on remand violated his Fifth Amendment rights. He cannot.

It was Faulkenberry, rather than the government, who appealed from the district court's original judgment, and that appeal led to reversal of the two money-laundering counts. This circuit and others hold that defendants lack a legitimate expectation of finality when resentencing follows reversal of some but not all related counts of conviction. Courts use various terms when describing such related sentences; some describe them as a "sentencing package" or "bundle," *see, e.g.*, *United States v. Binford*, 108 F.3d 723, 728 (7th Cir. 1997), while others label them "interdependent sentences." Regardless of terminology, 28 U.S.C. § 2106 "vests courts of appeals with the supervisory power to vacate and remand an entire sentencing package despite the fact that it includes an unchallenged sentence." *United States v. Clements*, 86 F.3d 599, 600-01 (6th Cir. 1996).

Seizing on the prior panel's use of the word "interdependent," Faulkenberry argues, in a

passage devoid of citation to dictionaries or legal authorities, that his sentences on the fraud charges

were not "interdependent" with the money-laundering charges:

> Analysis begins with the definition of three distinct words relating to three distinct concepts. "Independent" defines a situation in which A can exist without B. "Dependent" defines a situation in which A cannot exist without B. "Interdependent" defines a situation in which neither B nor A can exist without the other. Consider A to be the fraud counts on which Faulkenberry was convicted. Consider B to be the money laundering counts on which the Government failed as a matter of law to justify a conviction.

> Could Mr. Faulkenberry have been convicted of fraud and been found "not guilty" of money laundering? Obviously, yes. Therefore A is independent of B. Could Mr. Faulkenberry have been convicted of money laundering in the absence of the underlying offenses of fraud? No. Thus, B is dependent on A. Since A is not dependent on B, however, A and B cannot be considered "interdependent."

Faulkenberry misses the point by focusing on the meaning of "interdependence" as if it is a

stand-alone doctrine rather than a shorthand description of one situation in which an appeals court

can remand for a fresh resentencing. The Second Circuit—using different terms but examining the

same concept—cogently describes the effect that the reversal of one count can have on a multi-count

judgment of conviction:

> When a defendant challenges convictions on particular counts that are inextricably tied to other counts in determining the sentencing range under the guidelines, the defendant assumes the risk of undoing the intricate knot of calculations should he succeed. Once this knot is undone, the district court must sentence the defendant *de novo*.

*United States v. Atehortva*, 69 F.3d 679, 685-86 (2d Cir. 1995); *see also United States v. Mainville*, 9 F. App'x 431, 436 (6th Cir. 2001) (citation omitted).  In a later case, the Second Circuit further explained:

> A district court's sentence is based on the constellation of offenses for which the defendant was convicted and their relationship to a mosaic of facts, including the circumstances of the crimes, their relationship to one another, and other relevant behavior of the defendant.  When the conviction on one or more charges is overturned on appeal and the case is remanded for resentencing, the constellation of offenses of conviction has been changed and the factual mosaic related to those offenses that the district court must consult to determine the appropriate sentence is likely altered.  For the district court to sentence the defendant accurately and appropriately, it must confront the offenses of conviction and facts anew.  The offenses and facts as they were related at the first sentence may, by then, have little remaining significance.  The "spirit of the mandate" in such circumstances is therefore likely to require *de novo* resentencing.  In contrast, resentencing to correct specific sentencing errors does not ordinarily undo the entire "knot of calculation."

*United States v. Quintieri*, 306 F.3d 1217, 1227-28 (2d Cir. 2002).  *See also Binford*, 108 F.3d at 728 ("When a sentencing package is unbundled, such as when part of a sentence is vacated, we have held that, in order to effectuate its original sentencing intent, the district court may 'rebundle' the package by resentencing the defendant.").

Regardless of whether courts use the term "interdependence," "sentencing package," "bundle," or "constellation of offenses," the underlying concept remains the same: When a defendant is convicted of and sentenced for multiple offenses stemming from the same course of conduct and one or more of those convictions is reversed on appeal, the court of appeals can—and ordinarily should—remand the case for resentencing on the remaining counts.  Such a resentencing does not

11

upset a legitimate expectation of finality in the original sentence. *See Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997) (holding no double jeopardy violation when defendant challenged one of two interrelated convictions and "placed the validity of his entire sentence at issue").

Here, a jury convicted Faulkenberry of multiple criminal offenses stemming from a course of fraudulent conduct that spanned more than a decade and involved several co-defendants. The prior panel did not merely correct a sentencing error but instead reversed two counts in Faulkenberry's eight-count conviction. To use the Second Circuit's terminology, the reversal of the money-laundering counts removed two stars from the "constellation" of Faulkenberry's related offenses, leading the panel to relinquish to the district court the task of determining whether this significantly altered the broad "factual mosaic" that underpinned its original sentence. The Double Jeopardy Clause presents no bar to such a general remand. *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 116 (2003) (noting that Due Process Clause provides no greater double jeopardy protection than the Double Jeopardy Clause).

The reasoning that underpins our Double Jeopardy holding also defeats Faulkenberry's claim that resentencing violates the Fifth Amendment Due Process Clause's "fundamental notions of fairness."

III.

For these reasons, neither the prior panel's decision to remand to the district court for resentencing nor the district court's decision to resentence Faulkenberry to ten years' imprisonment violates the Double Jeopardy or the Due Process clauses.  We affirm.